FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 1 6 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

. . . . . . . . . . .
.
JIREH,INC.,MICKEY MOORES    .
and STEVEN CHAMPA          .
         Plaintiffs        . Civil Action No. 1:18-cv-03076-AT
                           .
                           .
         V.                .
                           .
JAMES CHAMPA               .
         Defendant         .
. . . . . . . . . . .

# VERIFIED[1]

### DEFENDANT'S OBJECTION TO PLAINTIFFS'2.18.20 MOTION TO DISMISS AND DEFENDANT'S MOTIONS FOR ATTACHMENT AND GARNISHMENT
### (Request for Hearing)
### *Introduction*

1.   Defendant has served and filed a motion to enlarge

time to respond to the Plaintiffs' Motion to Dismiss due to

the Plaintiffs' service by mail with was post marked 3/24/20,

which was 6 days after the Plaintiffs filed their motion with

a false certificate of service. This Objection response, etc.

will be filed under the deadlines promulgated in LR 7.1(B) as

calculated from the law office postage meter postmark [Feb.

24, 2020] on the Plaintiffs' motion  mailing envelope. Given

the Plaintiffs' intention to attempt the recision of the stock

---

[1]Verification here is the procedural equivalent of an affidavit as to facts stated.  Federal civil procedure requires that affidavits used in motion practice must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.  Defendant here meets the federal qualifications to present an affidavit.

redemption agreement for reasons outside of the enforceable
agreement, Defendant also seeks attachment against
Plaintiffs' assets and garnishment of Plaintiff Jireh's bank
accounts to preserve the assets for the stock redemption.

### *Operative Facts for Objection and Both Motions*

2. A concise statement of this case is that it is one in
which Defendant is a 32.9% shareholder, with the human
plaintiffs, his brother and brother-in-law, in the other
plaintiff, the S corporation, Jireh, Inc. ("Jireh") Jireh is a
corporation holding a franchise agreement[from On-Line Trading
Academy ("OTA")] to teach certain proprietary investment on
line trading techniques in Georgia and western Tennessee.

3. Defendant has been trying to (redeem)cash out his
investment in Jireh since 2011. He alleges three major points
in conjunction with his desire to cash out - (1) Plaintiffs
have violated federal law by <u>failing</u> to obtain the Defendant's
annual consent to withhold his pro-rata annual net K-1 profits
pursuant to or to release his annual pro-rata S corporation K-
1 profits that he is due, pursuant to 26 CFR § 1.1368-1 for
over the now almost 11 year life of Jireh and (2) that Jireh's
2016 accepted offer to buy the Defendant out (stock
redemption)remains in force irrespective of any purported
fluctuations in business or delays that have been caused

primarily by the Plaintiffs' interference with the Defendant's legal right, pursuant to Nevada law,  to audit the Defendant corporation's books and records and (3) that the plaintiffs have been embezzling significant amounts of Jireh's funds, including the Defendant's K-1 profits and other unreported corporate gross income all to Defendant's detriment.[2]

**4.**  The case is presently stalled due to the Plaintiffs' refusal to comply with a court ordered audit pursuant to Nevada law [it has been so since April, 2019.] The Plaintiffs continue to violate Nevada law and this Court's instructions by their refusal to produce numerous documents, (including checks, invoices, and 3rd party documents identified during the telephone hearing conducted by the Court in or about April 2019,)  for review by Defendant's forensic accountants.

### Controlling Law for Defendant's Objection

**5.**  FRCP 41(a)(2) states in pertinent part – "*If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order*

---

[2]Defendant submits this short summary of major areas of dispute with a  reservation of all rights. Defendant suggests the Court , for a more detailed recitation of the areas of dispute, refer to his Answer/counterclaim in its entirety and his Verified  Response at paras. 9 through 17.

*states otherwise, a dismissal under this paragraph (2) is without prejudice."*

6.     **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007) states in pertinent part that here must be sufficient facts in a complaint to state a claim to relief that is plausible on its face for it to avoid dismissal for failure to state a claim.

### *Argument for Defendant's Objection*

7.  Here Plaintiffs seek to have their cake and eat it too.  FRCP 41(b) is abundantly clear that a plaintiff's request for voluntary dismissal cannot serve to eradicate a defendant's counterclaim.

8.  While, Plaintiffs' purported allegations of fiscal distress and exposure to OTA's regulatory problems may serve to affect the future fiscal wherewithall of the company, the stock purchase agreement remains in force.  Further, they do not affect the necessity of resolving Defendant's counterclaims.  The Plaintiffs' motion states that "Jireh has seen a decrease in revenues, particularly in the last year." This statement is a patent lie. In October of 2019, the Plaintiffs attended and received the "Champions Cup" at the 2019 Online Trading Academy Award Ceremony. The award was given to the top financial producing franchisee for the year.(

See: Plaintiff Steven Champa's instragram/ PicBurn  photos of
the OTA 2019 awards ceremony attached hereto as Exhibit A.)
Plaintiff Steven Champa is holding the coveted Champions Cup
trophy with Plaintiff/CEO Mickey Moores standing to his left
with his thumb pointed up. Further, in his instagram/picburn
post for the world to see,  Plaintiff Steve has touted Jireh
Inc.'s 2019 business success stating, **" I couldn't be more
proud of everything our team accomplished in 2019( emogi of
trophy) The Relentless Commitment shown by every single one of
our staff is unmatched!"** The Defendant requested the Jireh
Inc., 2019 tax returns, profit and loss statement and balance
sheets. To date, the Plaintiff's have refused to respond the
request.

**9.**  On the question of whether any dismissal of
Plaintiffs' case in chief should be "without prejudice", the
**Twombly** case is applicable by analogy.

**10.**  Applying **Twombly to the Plaintiffs' motion**, there is
a distinct dearth of facts to state a plausible claim that
Plaintiffs' case in chief simply be sedated for a while, to be
resuscitated when Plaintiffs so desire.  There are no economic
conditions articulated in the stock redemption agreement that
permit the Plaintiffs to rescind or revoke the transaction.
The buy out price, ($450,000.00 as bargained for consideration

for the stock plus the release of the Defendant's pro-rata
share of the aggregated undistributed K-1 profits).  Likewise,
there is no documented support for the claim that Jireh is
unable to fund the buy out payment at this time.


## WHERE ARE THE UNDISTRIBUTED ACCUMULATED SHAREHOLDER PROFITS? 2010-2019

**Redemptions**

26 C.F.R. Sec. 1.1368-2(d)(1)(I) provides:

In the case of a redemption distribution by an S corporation that is treated as an exchange under [Sec.] 302(a) or [Sec.] 303(a) (a *redemption distribution*), the AAA of the corporation is adjusted in an amount equal to the ratable share of the corporation's AAA (whether negative or positive) attributable to the redeemed stock as of the date of the redemption.

***Example :*** *S* is an S corporation with two shareholders, *G* and *H*, each owning 50 shares of *S's* stock. On Dec. 31, 2016, *S* redeems for $13 all of shareholder *G's* stock in a redemption that is treated as a sale or exchange under Sec. 302(a). Further assume that on Dec. 31, *S* had AAA of $6 and E&P of $20. The result of the redemption is that *S* will adjust AAA by the ratable share of AAA attributable to the redeemed shares, or $3 (50% × $6). Likewise, E&P is adjusted by the ratable share of E&P attributable to the redeemed shares, or $10 (50% × $20) (see Regs. Sec. 1.1368-3, Example (9)).


11. The Jireh, Inc. 2017 1120S tax return states at
schedule M-2 at line #8, the total <u>accumulated</u> adjusted
undistributed previously taxed income or shareholder profits
<u>reported</u> by Jireh, to the Internal Revenue Service under the
pains and penalties of pejury, for the years 2010-2017 are

Page -6-

reported in the in the amount of  $4,236,017.00 dollars.(See:
2017 Jireh schedule M-2 attached hereto at Exhibit B.)

Pursuant to the 2017 Jireh schedule M-2, at redemption, James
is entitled to  = **$1,412,005.67** of the undistributed
shareholder profit identified in the Accumulated Adjustments
Account,("AAA".) Further, James is due an additional
**$343,016.00** ($523,016.00 - $180,000.00 = $343,016.00 See: 2018
Jireh K-1 at lines #1 and 16D attached hereto as Exhibit
#C)for 2018 with the math for 2019 being withheld by the
Plaintiffs.  The total accumulated undistributed profit from
2010-2018 for 3 shareholders, which should be maintained in
the Jireh Accumulated Adjustments Account is **$4,236,017.00**
dollars (2010-2017) + **1,029,048.00**($343,016.00 **x 3**
**shareholders=1,029,048.00)** for the total undistributed K-1
shareholder profit retained = **$5,265,065.00 total.**  This net
amount should be reported at line #8 in the M-2 schedule of
the Jireh 1120S 2018 federal tax return after all permitted
adjustments and expenses have been identified and taken[3].
There should be more than adequate money available in the
Accumulated Adjustments Account to complete the Defendant's
stock redemption.[4]

---

[3] Attorney Mihill has erroneously and improperly previously stated that the money was used to run the business.  The Jireh tax returns at schedule M-2, line #8, do not support such a statement or argument.

[4] James reserves all rights regarding any misappropriated or converted funds.

12. Last, but not least, franchisor OTA's regulatory woes with the FTC are pleaded without any evidence or supporting facts. A review of the FTC suit in California [USDC (CD Calif) no. 20-287-JVS-KES] reveals that none of the parties in that suit, (OTA and several of its officers, employees and affiliates), are parties here and that none of the parties here are parties there.

13. Defendant, having reviewed the OTA/Jireh franchise agreement sees no requirement that a franchisee or its owners help fund legal costs incurred by OTA, its officers, employees or affiliates in this regard.

14. If Plaintiffs are going to dismiss their suit in Georgia, they should do so in a fashion that the dismissal will serve to move the litigation here forward between these parties. Make the dismissal "with prejudice."

### Controlling Law for Provision Attachment

15. All remedies for the seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the federal action are available under the circumstances and in the manner provided by the state law of the state in which the federal court sits. FRCP 64.

16. Attachments may issue when the debtor resides out of state, moves or is about to move his domicile outside the

limits of the county, absconds, conceals himself, resists legal arrest or is causing his property to be removed beyond the limits of the state. OCGA Title 18-3-1.

### *Argument for Attachment*

**17.** In the present case, the argument for attachment is even more compelling because the Plaintiffs' obligation to release Defendant's pro-rata share of the AAA funds over to the  defendant at redemption [the Jireh S corporation distributions] is codified in the Code of Federal Regulations - 26 CFR § 1.1368 - 2.  Plaintiffs owe the Defendant **$1,755,021.00**in undistributed S corp. accumulated K-1 shareholder profits, with 2019 still not disclosed, plus the agreed upon purchase price of **$450,000.00**[5] for redemption of Defendant's stock interest in Jireh.

**18.** Plaintiff, in his verified response entered on the docket of the instant case on April 24, 2019, at ¶s 13-14, has stated under oath the fact that at least $1.8 million in Jireh cash assets were deposited in Jireh BOA bank accounts, and have disappeared.  The missing money was not reported as gross receipts to the taxing authorities when it was deposited in the Jireh (BOA) accounts between 2011-2015.  He has also

---

[5]At the time,  the fair market value for James's stock was between approximately 1.5 million and 2.5 million dollars which was approximately 3 to 5 times annual net income. Because the Plaintiffs created a shareholder freezeout by precluding any notice or access to shareholder voting and by withholding significant K-1 profits to cause significant tax obligations for James while he wrestled with disabling treatment resistant depression, James accepted the offer.

stated there that he believes that the two non-corporate
Plaintiffs simply stole those assets.  These facts and the
belief derived from them serve to satisfy one of the
alternative grounds for the issue of a writ of attachment
under Georgia law. Further, the audit delays attributable to
the Plaintiffs continue to cause financial harm to the
Defendant with respect to income taxes with accumulating
penalties and interest charges.

### *Controlling Law for Garnishment*

19.  All remedies for the seizure of person or property
for the purpose of securing satisfaction of the judgment
ultimately to be entered in the federal action are available
under the circumstances and in the manner provided by the
state law of the state in which the federal court sits.  FRCP
64.

20.  Property subject to garnishment under Georgia law is
all debts accruing from the garnishee to the defendant from
the date of service of the writ of garnishment to the date of
the garnishee's answer shall be subject to process of
garnishment.  Such "debts" can include the assets in a
defendant's bank account.  OCGA Title 18-4-20.

### *Argument for Garnishment*

21.  Jireh conducts its banking in Georgia at Bank of
America.  It has at least two bank accounts there - account

nos. 5010 0727 5528 and 5010 0727 5531.  These accounts contain some, if not all of the monies owed defendant which is $ 2,205,021.66 through 2018, with 2019 yet to be disclosed by the Plaintiffs.

22.  Because it is believed that Defendant Jireh never actually established a "AAA" account, to the extent that Jireh has assets at Bank of America or any other financial institution where the undistributed K-1 funds may have been deposited, such accounts are subject to the right of shareholder distribution to the Defendant at stock redemption[6].

### Conclusion

23.  For all of the reasons heretofore stated, the Court should enter the following orders:

(1) A dismissal of the Plaintiffs' case in chief, *with prejudice;*

(2) Entry of a writ of attachment against all three Plaintiffs in the amount of **$ 2,205,021.66** of which **$1,755,021.66** is for James' undistributed K-1 profits (2011-2018) plus **$450,000.00** as the bargained for consideration the Plaintiffs agreed to pay for James' Jireh, Inc., stock, pursuant to the stock redemption agreement with the Plaintiffs

---

[6]Jireh has co- mingled the undistributed K-1 profits( accumulated AAA funds) with its operating account funds.

which is the basis of this law suit brought by the Plaintiffs;

(3) Entry of a writ of garnishment against Bank of America or any other financial institution where the assets of Jireh, Inc., are being held.  Said writ to be in the amount of $ 2,205,021.66[7]; and for

(4) For such other and further relief as the Court deems fair and appropriate.

### *Verification*

Signed at Sudbury, Middlesex County, Commonwealth of Massachusetts, this 10th Day of March, 2020 under the pains and penalties of perjury.

James F. Champa

Dated: March 10, 2020

James F. Champs, *Pro/Se*

---

[7]The Defendant has not received 2019 Jireh, Inc., financial records or a form 1120S K-1 schedule from the Plaintiffs to date and reserves all rights to request an increase in attachment/garnishment related to the 2019 financial year and any other funds James would entitled to after the conclusion of the audit of Plaintiff Jireh, Inc.

## Certificate of Service

I hereby certify that I have served a copy of this
**DEFENDANT'S OBJECTION TO PLAINTIFF'S 2.18.20 MOTION TO DISMISS
AND DEFENDANT'S MOTIONS FOR ATTACHMENT AND GARNISHMENT
(Request for Hearing)** upon counsel for the Plaintiffs, T.J.
Mihill, Esq., Owen, Gleaton, Egan, Jones & Sweeney, LLP, ~~1180~~ *303*
Peachtree Street, NE, Suite ~~3000~~ *2550*, Atlanta, GA by USPS first class
mail this 11th day of March, 2020.

JAMES CHAMPA
*Pro Se*

Dated: March 11, 2020